OPINION OF THE COURT
Martin Evans, J.
In this malpractice action, defendants Jack Harnes, M.D., a former coemployee of plaintiff, and American International Group (AIG), plaintiff’s former employer, move for summary judgment on the ground that the exclusive remedy for plaintiff is under the Workers’ Compensation Law.
The complaint, as amplified by the bill of particulars, alleges that plaintiff, who had received occasional medical care and treatment from medical employees of AIG from 1978, when she was first employed until September 1981 when she resigned her employment, also was given routine annual physical examinations. These appear to haVe been given on January 11, 1978 when she was hired, April 27, 1979 and, on a less than annual basis, in February, May and August of 1980. She alleges that as part of those examinations X rays were taken by the defendants or by the agents or employees of defendants, and that the X rays disclosed a cancerous disease process in her lungs. She alleges that the defendants failed to read the X rays properly and *10 therefore failed to observe or to diagnose this cancer, and failed to advise the plaintiff of the proper course of treatment for it. She alleges that this failure to act properly caused her condition to be aggravated and that the cancer metastasized to her brain, requiring, for its correction, the expenditure of large sums of money. She also alleges that as a result of her having been given a “clean bill of health” by the defendants, she resigned her position with AIG, thereby giving up various medical benefits which she otherwise would have used to cure her condition.
There is no claim by either party that the plaintiff’s underlying condition was caused by any negligence or by any nonnegligent act of either defendant. According to the complaint, the condition was evident at the time of her first examination in January 1978 when she was hired and when the first X ray was taken.
The complaint clearly states a cause of action based on ordinary negligence, in that the defendants are charged with having a duty of care toward plaintiff and with breaching that duty, with resulting injury to plaintiff.
The injury claimed by plaintiff is the continuing growth of the cancer and its metastasis to another part of her body.
The contention of the defendants is that the injury to plaintiff arose out of and in the course of the employment relationship between the plaintiff and the defendants, and that as a result, this court has no jurisdiction of the case, but that plaintiff’s sole remedy is under the Workers’ Compensation Law.
Workers’ Compensation Law § 10 creates liability without fault for “disability or death from injury arising out of and in the course of the employment” and section 11 makes this remedy “exclusive and in place of any other liability whatsoever”.
“Injury” and “personal injury” for the purposes of the Workers’ Compensation Law are defined in section 2 (7) to “mean only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom.”
That there was an employment relationship is clear. Plaintiff was employed by defendant AIG, and received her medical examinations as a part of her employment relationship. Defendant Hames, a doctor employed on a full-time basis by AIG, had among his sole duties the responsibility for the conduct of the physical examinations and the care and treatment of AIG’s employees. (Garcia v Iserson, 33 NY2d 421.)
Thus, the duty to plaintiff, which was, as she alleges in her complaint, the duty to examine the X rays properly, and to *11 advise her of her condition, was a duty arising solely from the employment relationship in which she, the defendant doctor, and her employer were involved.
Whether or not the injury was an “accidental injury” as to which the Workers’ Compensation Law provides the exclusive remedy is the single question on this motion.
The word “accident” and the phrase “accidental injury” may have different meanings depending upon the context in which the words are used, and the meanings may be dependent upon the intent of the statute or of the document in which the words appear.
The purpose of the Workers’ Compensation Law being remedial, it must be construed with the view of fairly and fully carrying out the legislative purpose, so as to give compensation, regardless of fault, to workers whose injuries arise out of their employment. (Matter of Rheinwald v Builders’ Brick & Supply Co., 168 App Div 425; Goldstein v State, 281 NY 396.)
An injury is accidental when either the cause of the injury, or the result of the injury, is unexpected, unforeseen or unintended. (See, Accidental Injury Under the New York Workmen’s Compensation Law, 28 Fordham L Rev 322 [1959].)
This is a commonsense definition, which will fully and fairly carry out the legislative intent.
While most causes are the result of mechanical motion, such as the movement of a machine, or of a tool, or the falling of a brick, or the movement of a part of either the body of the worker or the body of another person, there is no reason in logic or experience why the unexpected, unforeseen or unintended cause should be limited to those instances. Nothing in the statute impels that limited construction. Indeed, section 38 indicates that the Legislature intended a broader construction. (Contra, where the similar statute in Washington requires “a sudden and tangible happening of a traumatic nature”.) Thus, an injury resulting from the inadvertent inattention of a fellow worker to the danger in which another may be placed (even if the danger itself be the nonaccidental, deliberate act of a third person) would be, and should be included within that definition.
For a hypothetical example, a worker doing some work on a street may be deliberately struck by an automobile. If another worker, whose duty was to warn the worker in the street, negligently failed to perform his duty, it would be clear that this inadvertent failure to act would be considered to be unexpected, unforeseen or unintended, and the Workers’ Compensation Law would cover that case.
*12 That being so, it becomes clear that the inadvertent, unforeseen and unintended act of inattention of Harnes or of other workers under his supervision, is an accident which, it is here claimed by plaintiff, resulted in injury to her.
Although the progression of plaintiff’s disease was not accidental, the cause of its nondiscovery was accidental. Since it is alleged that the increased cell growth could, if disclosed, have been prevented, the damages were the result of an accident.
There is little doubt that had the doctor, while treating her, caused a broken blood vessel, this would have been a compensable injury. Despite that his alleged act was passive, rather than active, it was nevertheless a breach of his duty.
It was not the original disease which is compensable, but the injuries due to the aggravation, caused by the nonfeasance of a coemployee. The accidental nonfeasance being the cause of the injury, it is compensable. (See, Tourville v United Aircraft Corp., 262 F2d 570 [2d Cir 1959].)
The case of Matter of Allen (Costner) v American Airlines (78 AD2d 917) is distinguishable. There it appears that the X ray that was misread on October 20, 1971 and the X ray read on January 22, 1972, both of which showed the mass in the chest, were “virtually carbon copies”. The mass in the chest, which was a malignant carcinoma, was removed after its discovery.
Castner’s decedent, Allen, died on June 14, 1972 of a malignant teratomatosis. It appears most likely that there was no change in the mass in the chest between October 20, 1971 and January 22,1972, and thus no injury from the misreading of the X rays. It is also likely that no connection was shown, to the satisfaction of the board, between the carcinoma and the teratoma which caused the death. The court held that the decision of the board, denying accidental injury compensation, was founded on substantial evidence, and it was affirmed.
Although the malpractice in Garcia v Iserson (33 NY2d 421, supra) was “active” rather than the “passive” failure to observe a condition, the decision did not turn on that point. There was employment of the injured person, and the doctor was a coemployee. The court said (p 423): “Under these circumstances we conclude that plaintiff’s injuries arose out of and in the course of his employment as the result of the alleged negligence of another in the same employ.” (See also, Golini v Nachtigall, 38 NY2d 745 [1975].)
It is, of course, possible that in the present case the board might come to a conclusion adverse to plaintiff if there is *13 evidence to support a finding that either the earlier X rays were not misread, or that there was no interim increase of the cancer, or that there was no metastasis. There is no guarantee that the board will accept plaintiff’s factual claims. But that is secondary to the question as to whether the case should be presented to the board in the first instance; and it is concluded that should be done.
However, by reason of the novelty of the question, the court recognizes that the board, even if it accepts the factual premises of plaintiff’s claims, might nevertheless rule that it is not compensable under the act. If that decision were to be finally affirmed, a dismissal here would leave the plaintiff remediless despite what may be a meritorious tort claim. Under the circumstances, this case will not be dismissed, but stayed pending a final determination in a compensation proceeding. If the board finds the injury compensable, defendants may renew their motion for summary judgment. If it is finally decided that the board does not have jurisdiction, this case may proceed. (See, Bednarski v General Motors Corp., 88 Mich App 482, 276 NW2d 624.)