(928 P.2d 109)
No. 74,310

SANDRA L. SCOTT and JOHN WAYNE SCOTT, Individually; SANDRA L. SCOTT, Natural Mother and Next Friend of THOMAS RICHARD SCOTT; the Heirs-at-Law of GARY R. SCOTT, Deceased; and SANDRA L. SCOTT, Administratrix of the Estate of GARY R. SCOTT, Deceased, *Appellants*, v. WOLF CREEK NUCLEAR OPERATING CORP., STEPHEN E. HOCH, P.A., KEITH W. CLEMENTS, P.A., and NELSON P. WHITE, M.D., *Appellees*.

Opinion filed December 13, 1996.

*Randall E. Fisher*, of Law Offices of Randall E. Fisher, of Wichita, and *Christopher P. Christian* and *Derek S. Casey*, of Hutton & Hutton, of Wichita, for appellants.

*Richard C. Hite* and *F. James Robinson, Jr.*, of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, for appellees.

Before ELLIOTT, P.J., PIERRON, J., and MARLA J. LUCKERT, District Judge, assigned.

ELLIOTT, J.: At issue in this case is whether the exclusive remedy provision of the Workers Compensation Act bars a civil suit against an employer and coemployees for the negligent treatment of a heart attack, even though the heart attack itself is not compensable under workers compensation. The district court found that workers compensation was the exclusive remedy, and we affirm.

Gary Scott suffered a heart attack while working at Wolf Creek Nuclear Power Plant (Wolf Creek) and died a short time later. Before his death, Scott was treated by Stephen Hoch and Keith Clements, physician's assistants who were employed by Wolf Creek to provide first aid and other immediate care to Wolf Creek employees for both occupational and nonoccupational illnesses and injuries arising during the workday.

Scott's estate and heirs filed a medical malpractice action against Wolf Creek, Hoch, Clements, and their supervising physician, Nelson White, M.D., alleging that Scott lost a chance of surviving the heart attack because of the negligent treatment he received from Hoch and Clements. White was later dismissed from the suit without prejudice by stipulation of the parties. The district court granted summary judgment in favor of the remaining defendants, ruling that plaintiffs' suit was barred by the exclusive remedy provision of the Workers Compensation Act.

On appeal, plaintiffs argue that the district court erred in granting summary judgment (1) because the original injury was non-

compensable under K.S.A. 44-501(e), commonly referred to as the heart amendment; (2) because, under a dual capacity theory, defendants were not acting in their capacities as employer and coemployees but were acting as health care providers; therefore, they were not immune from tort liability; and (3) because defendants were estopped from claiming that workers compensation was plaintiffs' exclusive remedy when Wolf Creek previously told Scott's widow that she was not entitled to workers compensation benefits for her husband's death.

Under the exclusive remedy provision of the Workers Compensation Act, if an employee can recover workers compensation for an injury, he or she is barred from bringing a negligence suit for damages against an employer or coemployee. K.S.A. 44-501(b). Thus, the pivotal question to be resolved is whether plaintiffs' claim is compensable under the Act. In order to recover workers compensation, a claimant must show that he or she suffered "personal injury by accident arising out of and in the course of employment." K.S.A. 44-501(a). The heart amendment, however, specifically precludes coverage for "coronary or coronary artery disease" unless caused by exertion which was "more than the employee's usual work in the course of the employee's regular employment." K.S.A. 44-501(e).

Here, the parties stipulated that Scott's heart attack was not causally connected to his exertion at work. Plaintiffs argue that their claim is noncompensable under the heart amendment; therefore, the exclusive remedy provision does not apply. Defendants respond that the heart amendment does not apply because plaintiffs' claim involved the loss of chance of survival, not the heart attack itself.

We agree with defendants that there is an important distinction between a claim based upon a heart attack and a claim based upon a loss of chance of surviving a heart attack due to negligent treatment. Had plaintiffs sought compensation for the heart attack itself, the heart amendment would likely have barred their claim. Instead, plaintiffs' petition claimed that defendants' negligence caused or contributed to Scott's death by reducing his chance of

surviving the heart attack. This type of claim is not barred by the heart amendment.

The next issue, then, is whether the negligent treatment of Scott's heart attack arose out of and in the course of his employment with Wolf Creek. To arise "out of" employment, there must be some causal connection between the injury and the employment. An injury arises out of employment where it arises out of the nature, conditions, and incidents of employment and does not arise from a hazard to which the worker would have been equally exposed apart from the employment. *Martin v. U.S.D. No. 233*, 5 Kan. App. 2d 298, 299, 615 P.2d 168 (1980).

Defendants cite two recent decisions of this court in support of their argument that Scott's loss of chance of survival arose out of his employment. In *Bennett v. Wichita Fence Co.*, 16 Kan. App. 2d 458, 824 P.2d 1001, *rev. denied* 250 Kan. 804 (1992), the claimant was injured when he suffered an epileptic seizure while driving a company vehicle to make a delivery and ran into a tree. We held that the conditions of the claimant's employment placed him in a position of increased risk which created the necessary causal connection between the injury and the employment; therefore, the injury arose out of claimant's employment and was covered by workers compensation. 16 Kan. App. 2d at 460.

We cited *Bennett* in deciding *Baggett v. B & G Construction*, 21 Kan. App. 2d 347, 900 P.2d 857 (1995). *Baggett* involved a claimant who was injured when he was assaulted by a coemployee and fell into an open hole on the job site. The *Baggett* court noted that in *Bennett*, we looked at the injury and whether it was exacerbated by employment conditions. The *Baggett* court held that because the concurrence of the assault and the employment hazard caused claimant's injury, the injury was compensable. 21 Kan. App. 2d at 350. In discussing the causal connection between the injury and the employment, we stated:

"[T]his assault was clearly not precipitated by a work-related matter. However, like Bennett, Baggett's injury was partly the result of work-related circumstances. Bennett may not have crashed into a tree during an epileptic seizure had he not been working. Likewise, Baggett would not have sustained a serious head injury

and broken clavicle during a pushing match had he not been on the job site, which contained an open hole." 21 Kan. App. 2d at 350.

We hold that there is a causal connection between Scott's employment at Wolf Creek and his receiving negligent medical treatment. Even though the treatment was for a nonwork-related injury, Scott received treatment because he was an employee of Wolf Creek. The physician's assistants who treated Scott were employees of Wolf Creek whose purpose was to provide medical treatment to Wolf Creek employees for both occupational and nonoccupational diseases and injuries. In other words, Scott would not have been equally exposed to the risk of negligent medical treatment by Wolf Creek physician's assistants apart from his employment at Wolf Creek. His injury, the loss of chance of survival, might not have occurred had he not been at work and treated by Wolf Creek physician's assistants.

Our decision is also supported by Professor Larson's workers compensation treatise. He states:

"[W]hen the employer's participation in the episode goes beyond mere examination and extends to some kind of active conduct or attempted treatment by the employer or his employees aggravating the noncompensable condition, this has usually been held to be sufficient to endow the matter with compensable character and hence bar a damage suit." 2A Larson's Workmen's Compensation Law § 68.35 (1996).

We are not persuaded by plaintiffs' analysis of *Wright v. United States*, 717 F.2d 254 (6th Cir. 1983), and other federal cases. Wright involved a secretary at a hospital who suffered a ruptured tubal pregnancy while performing her duties. Although she was not entitled to treatment, the hospital undertook to treat her. The Sixth Circuit Court of Appeals ruled that Wright's later civil suit against the hospital for negligent treatment was not barred because there was no causal connection between her tubal pregnancy and her employment as a secretary; thus, her claim was not compensable under the Federal Employees Compensation Act. 717 F.2d at 258-59.

Plaintiffs contend that the dispositive factor in *Wright*, and cases like it, is that claimant's original injury was not work related. We find the distinguishing fact to be that Wright's employer was a

health care provider who undertook to treat her on the same terms as any other private patient. Again, Professor Larson's treatise supports this view. He explains that where an employer undertakes to treat an employee as a private patient and "the case involves a purely private relation with no employment involvement, suit is usually not barred." The result may be different, however, where "it is the employer's policy to provide first aid or other care for even nonoccupational illnesses appearing during the workday." 2A Larson, § 72.88.

Plaintiffs' next argument is that, under the dual capacity doctrine, an employer or coemployee who provides medical treatment to an employee should not be immune from tort liability because that employer or coemployee is acting in a second capacity as a health care provider.

Kansas first recognized the dual capacity doctrine in *Kimzey v. Interpace Corp.*, 10 Kan. App. 2d 165, 167, 694 P.2d 907, *rev. denied* 237 Kan. 887 (1985):

> "According to the dual capacity doctrine, an employer who is generally immune from tort liability to an employee injured in a work-related accident may become liable to his employee as a third-party tortfeasor if he occupies, in addition to his capacity as an employer, a second capacity that confers upon him obligations independent of those imposed upon him as an employer. It is in this second capacity that liability to an employee may be imposed."

In *Kimzey*, an employee was injured while operating a pyramid roll machine in the course of his employment with Interpace. The machine was designed and manufactured by Lock Joint. Lock Joint later dissolved and eventually merged into Interpace. As part of the merger agreement, Interpace agreed to assume all of Lock Joint's obligations and liabilities. The injured employee brought a products liability suit against Interpace, alleging that Interpace, as corporate successor to Lock Joint, was liable for product defects and negligence. 10 Kan. App. 2d at 165-66.

The trial court granted summary judgment in favor of Interpace on the ground that plaintiff's exclusive remedy was workers compensation. This court reversed. The *Kimzey* court discussed the dual capacity doctrine and found that it applied to the facts of that case. The court noted:

> "The doctrine should not be used for the purpose of simply evading the exclusivity provision of the Workmen's Compensation Act. When properly applied, it will be limited to those exceptional situations where the employer-employee relationship is not involved because the employer is acting as a second persona unrelated to his status as an employer, that confers upon him obligations independent of those imposed upon him as an employer." 10 Kan. App. 2d at 170.

Utilizing the dual capacity doctrine, the court held that Interpace had stepped into the shoes of Lock Joint with respect to the liability question; therefore, the suit was not barred by the exclusive remedy provision of the Workers Compensation Act. 10 Kan. App. 2d at 170.

Kansas courts have not yet extended the dual capacity doctrine to factual situations other than the one described in *Kimzey*. Plaintiffs argue that the doctrine should be applied to the instant factual situation.

There appears to be a split of authority on the issue of whether the dual capacity doctrine should apply where a company doctor treats a fellow employee. The majority of states which have considered the issue have concluded that a malpractice action against a company doctor is barred by the coemployee immunity provisions of workers compensation statutes. 73 A.L.R.4th 115. Again, Professor Larson agrees with the majority view, as do we. Larson explains:

> "The fallacy . . . is simply that the company doctor does *not* have two capacities. He has only one: company doctor. That is the entire extent of his relation to his coemployees. All he does, all day long, is perform in this single capacity in relation to his coemployees. By contrast, the employer-physician has the entire array of employer-employee duties and obligations, which are utterly unrelated to his medical activities, and which quantitatively are a thousand times as great." 2A Larson, §72.61(b).

We decline to extend the dual capacity doctrine beyond the factual situation described in *Kimzey*.

Plaintiffs' final argument on appeal is that defendants were estopped from asserting the exclusive remedy provision of the Workers Compensation Act because Wolf Creek previously told Scott's widow that workers compensation benefits were not available for her husband's death. The district court ruled that estoppel would

be available to plaintiffs in workers compensation proceedings and the issue should be resolved in that forum. We agree. Furthermore, any determination by the workers compensation hearing officer and appeals board regarding plaintiffs' estoppel argument will be subject to appeal.

Affirmed.