724 A.2d 881

DONALD HAWKSBY AND JOANNA HAWKSBY, HIS WIFE, PLAIN-
TIFFS–APPELLANTS, v. JOSEPH DEPIETRO, M.D., DEFEN-
DANT–RESPONDENT, AND WALTER URS, M.D., MATTHEW
GARFINKEL, M.D., WILLIAM H. ROSS, D.O., AND METUCHEN
ORTHOPAEDIC GROUP, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued January 19, 1999—Decided March 9, 1999.

Before Judges D'ANNUNZIO, CUFF and COLLESTER.

*E. Drew Britcher*, argued the cause for appellants (*Leonard & Butler*, attorneys; *Mr. Britcher*, on the brief).

*Michelle A. Monte*, argued the cause for respondent Joseph DePietro (*Monte, Sachs & Borowsky*, attorneys, *Thomas D. Monte, Jr.*, of counsel, *Ms. Monte*, on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

The issue is whether a production employee may sue a physician, who is a fellow employee, for the physician's alleged failure to diagnose a malignant tumor during treatment for a compensable injury.

Plaintiff, Donald Hawksby, was employed by the New York Times Company on December 13, 1993. On that date, while engaged in his duties in the New York Times pressroom, he fell off a ladder injuring his left thigh and knee. Hawksby was treated, at least in part, by defendant, Dr. Joseph DePietro, the Times' medical director and a full-time employee of the New York Times. Hawksby alleges that DePietro treated him for approximately one year, but without improvement.

In late 1994, Hawksby was examined at Memorial Sloan–Kettering Cancer Center in New York City. The ultimate diagnosis was a "large high grade sarcoma of his left calf." The tumor "measures at least 20 cm and encompasses a good one-third of the circumference of the calf." Hawksby received chemotherapy.

The record does not clearly establish whether the tumor was removed surgically. We are unaware of the prognosis.

In January 1995, Hawksby filed a workers' compensation petition against the New York Times. In November 1995, Hawksby commenced this medical malpractice action against Dr. DePietro and other medical professionals. In October 1996, the trial court granted Dr. DePietro's motion for summary judgment on the ground that Dr. DePietro, being a fellow employee, was immune from a tort action under *N.J.S.A.* 34:15-8. The trial court denied plaintiff's request that the matter be placed on the inactive list pending the workers' compensation matter. The summary judgment order was interlocutory because the medical malpractice action continued against other medical professionals. This court denied plaintiff's motion for leave to file an appeal from the summary judgment.

The workers' compensation claim was disposed of on May 22, 1997 by entry of an order approving settlement. *See N.J.S.A.* 34:15-20. The order awarded Hawksby "10% of the left leg for residuals of a hamstring pull." It also stated that "[t]he spindle cell sarcoma is not causally related to the petitioner's employment or the accident of 12/13/93."

On July 23, 1997, plaintiff moved in the medical malpractice action, under *R.* 4:50-1, to set aside the summary judgment. The court denied this motion on October 24, 1997. That order was also interlocutory because the medical malpractice case had not been disposed of as to all parties. However, a stipulation of dismissal with regard to defendant, William H. Ross, M.D., the last party in the case, was filed on November 6, 1997. Plaintiff filed his timely notice of appeal on December 3, 1997, appealing from the October 24, 1997 order denying the motion to vacate the summary judgment entered on September 18, 1996.

An employee may not maintain an action for professional negligence against a fellow-employee physician arising out of the treatment of a compensable injury. The employee's sole remedy

is under the Workers' Compensation Act. *Boyle v. Breme*, 93 *N.J.* 569, 461 *A.*2d 1164 (1983); *Bergen v. Miller*, 104 *N.J.Super.* 350, 250 *A.*2d 49 (App.Div.), *certif. denied*, 53 *N.J.* 582, 252 *A.*2d 158 (1969). This principle is codified in *N.J.S.A.* 34:15–8, which provides that "[i]f an injury ... is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury ... for any act or omission occurring while such person was in the same employ as the person injured ... except for intentional wrong." This provision was added to the workers' compensation statute in 1961. *L.* 1961, *c.* 2, § 1. Prior to the amendment, however, an injured employee could maintain a tort action against a fellow employee whose alleged negligence was a proximate cause of the work-related injury. *Stacy v. Greenberg*, 9 *N.J.* 390, 397, 88 *A.*2d 619 (1952); *Churchill v. Stephens*, 91 *N.J.L.* 195, 102 *A.* 657 (E. & A.1917). *But see Burns v. Vilardo*, 26 *N.J.Misc.* 277, 280, 60 *A.*2d 94 (Sup.Ct.1948) (holding that an injured worker could not maintain a malpractice action against a plant physician for aggravating the industrial injury; the employer was responsible "in compensation for the whole injury" including the alleged aggravation of it and that the "remedy provided by the Compensation Act is exclusive.").

*Boyle* and *Bergen*, however, involved allegations of professional negligence which aggravated the compensable injury being treated. The present case is different. Plaintiff alleges that Dr. DePietro failed to diagnose a cancerous tumor not related to the industrial injury and otherwise not compensable. We are persuaded, nevertheless, that if Dr. DePietro, in failing to diagnose the cancerous tumor during his treatment of Hawksby's compensable injury, deviated from a standard of care, any additional harm as a consequence of that deviation constitutes a risk incidental to Hawksby's employment and would be compensable under the workers' compensation statute. *Cf. Livingstone v. Abraham & Straus, Inc.*, 111 *N.J.* 89, 543 *A.*2d 45 (1988) (store employee injured while walking in mall parking lot not owned by employer); *Thornton v. Chamberlain Mfg. Corp.*, 62 *N.J.* 235, 242, 300 *A.*2d 146 (1973) (injuries sustained by petitioner as a result of assault

by former co-employee, occurring nine days after petitioner terminated his employment, were compensable because they "were caused in every realistic sense by petitioner's exposure at work."); *Howard v. Harwood's Restaurant Co.*, 25 *N.J.* 72, 135 *A.*2d 161 (1957) (assault of employee by a co-employee at the employment site is a risk associated with the employment and is compensable); *Prettyman v. State*, 298 *N.J.Super.* 580, 689 *A.*2d 1365 (App.Div. 1997) (under "but for" test, petitioner's depression, high blood pressure and post traumatic stress disorder as a result of hostile aggressive interrogation by State Police detectives were compensable because the event arose out of work-connected duties).

Unlike the case where a physician aggravates the injury being treated, however, here the compensability of DePietro's alleged diagnostic failure would depend on concepts of fault, *i.e.,* if Dr. DePietro did not deviate from a standard of care, then neither he nor the New York Times is responsible, in tort or under the compensation statute, for the progression of the cancer because Hawksby would not have suffered harm from DePietro's treatment. Fault, however, is a concept foreign to the principles on which workers' compensation is founded.

Another potential anomaly involves the measurement of recovery. Although the record is sparse, it is likely that plaintiff's "injury" due to Dr. DePietro's alleged negligent diagnosis is an enhanced risk of recurrence of the cancer as in *Evers v. Dollinger*, 95 *N.J.* 399, 471 *A.*2d 405 (1984). *See Scafidi v. Seiler*, 119 *N.J.* 93, 574 *A.*2d 398 (1990). It may be difficult and awkward to apply concepts of permanent injury central to the workers' compensation scheme to injury measured by enhanced risk of recurrence. *See N.J.S.A.* 34:15–12.

Because of these anomalies, plaintiff's argument that this case is outside the bar of *N.J.S.A.* 34:15–8 has some appeal. We have determined, however, to reject the argument.

The majority of the courts which have addressed this issue have concluded, as New Jersey has, that an injured employee may

not maintain a malpractice action against a co-employee physician for the negligent aggravation of his or her existing injury. *See Hendy v. Losse*, 54 *Cal.*3d 723, 1 *Cal.Rptr.*2d 543, 819 *P.*2d 1, 11–14 (1991) (workers' compensation is the exclusive remedy of an injured employee against a negligent coemployee physician acting within the scope of his employment); *Panaro v. Electrolux Corp.*, 208 *Conn.* 589, 545 *A.*2d 1086, 1092–94 (1988) (Workers' Compensation Act exclusivity section precluded injured employee from bringing malpractice action against company nurse for negligent aggravation of work-related injury); *Young v. St. Elizabeth Hosp.*, 131 *Ill.App.*3d 193, 86 *Ill.Dec.* 389, 475 *N.E.*2d 603, 606 (1985) (injured worker's malpractice action against his coemployee, the company doctor, is barred by the exclusive remedy provision of the Worker's Compensation Act); *Moore v. St. Francis Cabrini Hosp.*, 679 *So.*2d 943, 945 (La.Ct.App.1996) (noting that, pursuant to statutory amendment effective January 1, 1990, Louisiana no longer allows injured workers to maintain malpractice suits against coemployee physicians); *Jones v. General Motors Corp.*, 136 *Mich.App.* 251, 355 *N.W.*2d 646, 648–50 (1984) (if nurse was coemployee acting within the scope of her employment when she negligently treated plaintiff's work-related injury, plaintiff will not be permitted to maintain a private malpractice action against the nurse); *Garcia v. Iserson*, 33 *N.Y.*2d 421, 353 *N.Y.S.*2d 955, 309 *N.E.*2d 420, 421–22 (1974) (worker whose work-related injury was aggravated by negligence of company physician could not maintain separate malpractice action against physician); *Proctor v. Ford Motor Co.*, 36 *Ohio St.*2d 3, 302 *N.E.*2d 580, 581–82 (1973) (employee who sustained work-related injury which was treated by plant physicians could not maintain separate medical malpractice action against physicians for damages stemming from their negligent misdiagnosis of his injury); *Budzichowski v. Bell Tel. Co.*, 503 *Pa.* 160, 469 *A.*2d 111, 112 (1983) (company physicians who treated worker's employment-related injury were coemployees of worker, not independent contractors, and were thus immune from suit for medical malpractice committed during course of that treatment); *Deller v. Naymick*, 176 *W.Va.* 108, 342 *S.E.*2d 73, 77–

80 (1985) (employee who sustained a minor knee injury during the course of his employment could not maintain medical malpractice action against company doctor for negligent treatment of his injury where doctor was acting in furtherance of employer's business when it treated employee).

A minority of courts have concluded that tort actions may be maintained because a company doctor acts in the dual capacity of coemployee and physician and, as a physician, has an independent duty to his or her patients. *See, e.g., Wright v. County of Jefferson*, 661 *P.*2d 1167, 1170 (Colo.1983) ("[o]ne's need for protection from medical malpractice is not affected by the configuration of the employment relationship or the location of treatment"); *Davis v. Stover*, 258 *Ga.* 156, 366 *S.E.*2d 670, 671–72 (1988) ("[b]ecause of the relationship between physicians and patients, company physicians cannot use the Workers' Compensation laws as a shield to insulate themselves from individual liability for medical malpractice claims").

Some courts which generally subscribe to the majority rule have applied the dual capacity approach where medical services are rendered to a hospital employee at a hospital which also treats the general public. *See e.g., Wright v. State*, 639 *So.*2d 258, 261 (La.1994) (where plaintiff, a hospital worker who sustained a work-related injury, was a patient like any other at the employer-hospital, he would be permitted to maintain a malpractice action against the co-employee physicians who treated him); *Guy v. Arthur H. Thomas Co.*, 55 *Ohio St.*2d 183, 378 *N.E.*2d 488, 492 (1978) (where hospital employee received treatment for a work-related injury as a patient and not as an employee, malpractice action for negligent treatment would be allowed).

With regard to treatment of non-work-related injuries, the general rule seems to be that an employee may not maintain a malpractice action against a coemployee physician if the employee would not have been in the position to receive the negligent care but for his employment. For example, in the case of *Scott v. Wolf Creek Nuclear Operating Corp.*, 23 *Kan.App.*2d 156, 928 *P.*2d 109

(1996), plaintiffs' decedent suffered a non-work-related heart attack while on the job and, although treated by two company-employed physician's assistants, died shortly thereafter. *Id.* at 110. Plaintiffs filed a medical malpractice action against the two assistants, as well as their supervising physician, alleging that decedent lost a chance of surviving the attack because of the negligent treatment he received. *Id.* at 111. The defendants' motion for summary judgment was granted by the trial court on the ground that the suit was barred by the exclusive remedy provision of the Workers' Compensation Act and plaintiffs appealed. *Ibid.*

In its decision affirming the trial court, the *Scott* court rejected plaintiffs' argument that they were entitled to maintain their suit because their claim was for a non-compensable injury. *Ibid.* According to the *Scott* court, plaintiffs failed to recognize that there was an "important distinction" between a claim based upon a non-work-related heart attack and a claim based on the lost chance of surviving a heart attack due to negligent treatment. *Ibid.* In the *Scott* court's view, the latter claim would certainly be compensable under the Workers Compensation Act, provided the negligent treatment arose out of and in the course of the employee's employment. *Ibid.* The *Scott* court concluded that decedent's treatment did so arise because "[e]ven though the treatment was for a non-work-related injury, [decedent] received treatment because he was an employee of Wolf Creek" and thus he "would not have been . . . exposed to the risk of negligent medical treatment by Wolf Creek physician's assistants apart from his employment at Wolf Creek." *Id.* at 112. Accordingly, the *Scott* court ruled that plaintiffs' claim was solely compensable under the Workers Compensation Act. *Ibid.*

In the case of *McNeil v. Diffenbaugh,* 105 *Ill.App.*3d 350, 61 *Ill.Dec.* 224, 434 *N.E.*2d 377 (1982), plaintiff slipped and injured his back while unloading a trailer for his employer, Montgomery Ward & Company Inc. *Id.,* 61 *Ill.Dec.* 224, 434 *N.E.*2d at 379. After his accident, plaintiff sought treatment from Dr. Willis G.

Diffenbaugh, a physician and fellow employee at Montgomery Ward's medical facility. *Ibid.* Although Diffenbaugh treated plaintiff's back injury, he failed to diagnose or treat an existing malignant tumor in the same area as the injury. He also failed to diagnose multiple myeloma which were also in plaintiff's back. *Ibid.* Thereafter, plaintiff became paralyzed and then terminally ill as a result of the myeloma. Ultimately, plaintiff filed suit against Diffenbaugh, as well as various other parties, alleging medical malpractice resulting in the aggravation of a non-work-related disease. *Ibid.* The trial court subsequently dismissed all counts against Diffenbaugh and plaintiff appealed. *Id.,* 61 *Ill.Dec.* 224, 434 *N.E.*2d at 379–80.

In its decision affirming the lower court's ruling, the *McNeil* court expressly agreed with the lower court that plaintiff's cause of action against the company physician was barred by the exclusive remedy provision of the Illinois Worker's Compensation Act. *Ibid.* In so ruling, the *McNeil* court noted that

It is the status of the person injured at the time of the injury, not the nature or source of the injury, that determines the exclusive application of the Act. It is undisputed that at the time of plaintiff's back injury he was an employee of Ward performing his lawful duties and that he came under co-employee Diffenbaugh's care for treatment of this injury. Diffenbaugh's 'negligence' in failing to diagnose plaintiff's cancer 'arose out of' and 'in the course of' both their employment at Ward. 'In the course of employment' relates to the time, place and circumstances of the injury, while 'arising out of the employment' refers to the requisite causal connection between the injury and the employment. Thus, the exclusiveness of the Act precludes a common law action for damages by an employee against a co-employee based on the latter's negligence during the course of their employment.

[*Id.,* 61 *Ill.Dec.* 224, 434 *N.E.*2d at 380 (citations omitted).]

Accordingly, the *McNeil* court concluded that plaintiff's injury was compensable through worker's compensation. *Id.,* 61 *Ill.Dec.* 224, 434 *N.E.*2d at 380.

Illinois' position in such cases subsequently was clarified in *Unger v. Continental Assurance Co.,* 107 *Ill.*2d 79, 89 *Ill.Dec.* 841, 481 *N.E.*2d 684 (1985). In *Unger,* plaintiff underwent what he believed to be a company-mandated physical examination at a company clinic during working hours. 89 *Ill.Dec.* 841, 481 *N.E.*2d at 686–87. During this examination, which was conducted by staff

physician Dr. Carl Hines, a chest x-ray was taken which revealed a malignant mass lesion. *Id.,* 89 *Ill.Dec.* 841, 481 *N.E.*2d at 686. This lesion was not diagnosed by Hines, however, until another chest x-ray was taken by him during a subsequent examination of plaintiff more than one year later. *Ibid.* Plaintiff subsequently sued Hines, alleging medical malpractice resulting in the aggravation of a non-work-related disease. *Ibid.* Following the trial court's entry of summary judgment in favor of Hines based upon the exclusive-remedy provision of the Illinois Worker's Compensation Act, which decision was affirmed on appeal, the Illinois Supreme Court granted plaintiff's petition for leave to appeal. *Id.,* 89 *Ill.Dec.* 841, 481 *N.E.*2d at 685.

In its decision affirming the dismissal of the plaintiff's action against Hines, the *Unger* Court recognized first that the pivotal question to be answered before the bar of the exclusive-remedy provision could be invoked was whether or not the injury arose out of and in the course of employment and was therefore compensable. *Id.,* 89 *Ill.Dec.* 841, 481 *N.E.*2d at 687–88. Noting that the "status" approach utilized in *McNeil v. Diffenbaugh, supra,* somewhat oversimplified the compensability analysis, the *Unger* Court considered a variety of factors including the fact that the examination occurred in a company clinic during working hours, the fact that plaintiff and Hines were co-employees, and the fact that plaintiff believed that the examination was a necessary condition of continued employment. *Id.,* 89 *Ill.Dec.* 841, 481 *N.E.*2d at 688–89. Relying upon those factors, the *Unger* Court ultimately concluded that, notwithstanding the fact that plaintiff was not initially treated by Hines for a line-of-duty injury, any injury stemming from the negligence of Hines arose out of and in the course of plaintiff's employment. *Id.,* 89 *Ill.Dec.* 841, 481 *N.E.*2d at 688–89. In so concluding, the *Unger* Court commented that it could not "discern a significant difference between the causal connection of injury and employment in the instant case and the more common situation of the aggravation of a work-related injury." *Id.,* 89 *Ill.Dec.* 841, 481 *N.E.*2d at 689. Accordingly, the *Unger* Court ruled that plaintiffs' action against Hines was barred

by the exclusive-remedy provision of the Illinois Worker's Compensation Act. *Ibid.*

In the case of *Lesavoy v. Harnes,* 127 *Misc.*2d 9, 484 *N.Y.S.*2d 988 (Sup.Ct.1984), plaintiff underwent a series of physical examinations in the course of her employment which were performed by Dr. Jack Harnes, a fellow employee. *Id.* at 989. Although x-rays taken in conjunction with these exams revealed a cancerous disease process in her lungs, this condition was not diagnosed by Harnes, who instead gave plaintiff a "clean bill of health." *Ibid.* Plaintiff subsequently brought suit against Harnes, who thereafter moved for summary judgment on the grounds that plaintiff's sole remedy was through workers' compensation. *Ibid.*

In its decision on the motion, the *Lesavoy* court observed that the single question involved was whether or not plaintiff's injury, *i.e.,* the continuing growth of the cancer and its metastasis to another part of her body, constituted an "accidental injury" for which workers' compensation would be the exclusive remedy. *Id.* at 990. The court noted that while most accidental injury is caused by "mechanical motion, such as the movement of a machine, or of a tool, or the falling of a brick, or the movement of a part of either the body of the worker or the body of another person," there was no reason why "injury resulting from the inadvertent inattention of a fellow worker to the danger in which another may be placed" should not be deemed accidental as well. *Id.* at 990–91.

As such, the *Lesavoy* court ruled that because the cause of the non-discovery of plaintiff's disease was accidental, plaintiff's injury could be considered the result of an accident and therefore solely compensable through workers' compensation. *Ibid.* In so ruling, the court emphasized that "[i]t was not the original disease which is compensable, but the injuries due to the aggravation, caused by the non-feasance of a co-employee." *Id.* at 991. Notably, although ruling in the defendant doctor's favor, the *Lesavoy* court noted that it was possible that the workers' compensation board might find that plaintiff's injury was not compensable. *Ibid.* As

such, the court decided to stay, rather than dismiss the case, pending a final determination in a compensation proceeding, in order to avoid leaving plaintiff remediless despite what it described as a possibly "meritorious tort claim." *Ibid.*

The reasoning employed in another New York case quite similar to the case at bar, *Liantonio v. Baum*, 91 *Misc.*2d 433, 398 *N.Y.S.*2d 111 (Sup.Ct.1977), is nonetheless instructive; although the result reached was ultimately reversed based on plaintiff's after-the-fact discovery that the Department of Sanitation was not covered by the state Workers' Compensation Act. In *Liantonio*, plaintiff, an employee of the Department of Sanitation, fell while on the job and injured his right shoulder. *Ibid.* He was treated for his injury by Dr. Victor Baum, a physician employed by the department, at the Sanitation Department Clinic. *Ibid.* Baum diagnosed plaintiff as suffering from a strained muscle and advised him to return to work. *Ibid.* Two months later, plaintiff broke his right arm and underwent a surgical procedure performed by a private physician which revealed a large cell tumor in his right humerus. *Ibid.* Plaintiff subsequently filed suit against Baum, alleging medical malpractice resulting in the aggravation of a non-work-related disease. *Ibid.*

On Baum's motion for summary judgment, the *Liantonio* court ruled that plaintiff's suit was barred by the exclusive remedy provision of the Workers' Compensation Act and dismissed plaintiff's complaint. *Id.* at 112. In so ruling, the *Liantonio* court rejected plaintiff's contention that his injury was not incidental to, nor did it arise out of his employment with the Sanitation Department, as well as his argument that the fact that he was denied job-related disability confirmed that the pre-existing tumor did not come about as a result of his activities in the course of his employment. *Ibid.* According to the *Liantonio* court:

> The flaw in plaintiff's argument is that he has not used the term injury in its correct perspective. Plaintiff, indeed, suffers from a cell tumor in his right humerus. However, the injury which is the basis of the instant lawsuit is not the tumor, but rather it is the alleged misdiagnosis by defendant of plaintiff's pre-existing condition and defendant's failure to properly treat plaintiff. That injury,

the proof of which is necessary to make a *prima facie* case, most certainly is incidental to and arose out of his employment; *e.g.,* plaintiff's contact with defendant-physician was at the Sanitation Department Clinic to which only employees are admitted, and furthermore plaintiff would not have been examined and diagnosed by the defendant unless he was an employee of the Sanitation Department, as was the defendant.

[*Ibid.*]

Finally, in *Darensburg v. Tobey,* 887 *S.W.*2d 84, 90 (Tex.Ct.App. 1994), plaintiff suffered a work-related injury to his wrist which was misdiagnosed, and consequently mistreated, by a company physician resulting in further injury to his wrist. *Id.* at 85. Plaintiff filed a malpractice action against the doctor for the aggravation of the original injury caused by the misdiagnosis. *Ibid.* The trial court subsequently dismissed the case as barred by the exclusive remedy provision of the workers' compensation statute and plaintiff appealed. *Ibid.*

Notably, in its decision affirming the result below, the *Darensburg* court accepted plaintiff's contention that the aggravation of his wrist injury was not immediately identifiable as a work-related injury. *Id.* at 87. Nonetheless, the court ultimately concluded that the second injury was, in fact, work-related, reasoning as follows:

Our review of the summary judgment evidence shows that [plaintiff] was only permitted to see [the company physician] as a result of his employment with [the company]. [The company] facilities were not open to the general public and [plaintiff] was authorized to treat only [company] employees. [The company] made a business decision to provide on-site health care for employees, and it was in the furtherance of this business interest that [plaintiff] allegedly sustained an additional injury. Thus, we conclude that the alleged aggravation of [plaintiff's] injury occurred in the course and scope of [plaintiff's] employment and is a work-related injury.

[*Ibid.*]

In view of its finding that plaintiff's injury was work-related and also that the company physician was not an independent contractor, the *Darensburg* court found that the lower court had properly dismissed the action as barred by the workers' compensation statute. *Id.* at 90.

■ In the present case, in addition to the weight of authority, we are influenced by the fact that tort immunity is one of the linchpins of the workers' compensation scheme:

> In 1911, in response to these common-law inequities, the legislature passed our Workers' Compensation Act. *L.* 1911, *c.* 95. This legislation involved a historic trade-off whereby employees relinquished their right to pursue common-law remedies in exchange for automatic entitlement to certain, but reduced, benefits whenever they suffered injuries by accident arising out of and in the course of employment. Thus the *quid pro quo* anticipated by the Act was that employees would receive assurance of relatively swift and certain compensation payments, but would relinquish their rights to pursue a potentially larger recovery in a common-law action.
>
> [*Millison v. E.I. du Pont de Nemours & Co.*, 101 *N.J.* 161, 174, 501 *A.*2d 505 (1985).]

This statutory framework should not easily be circumvented. *Id.* at 178, 501 *A.*2d 505. In this vein, the language in section 8 immunizing co-employees leaves little room for maneuver.

Finally, the issue of tort liability of employee-physicians is probably best left to a comprehensive review in the Legislature. The issue is potentially broader than the plant physician treating an industrial accident. It is not inconceivable in today's health care climate that some employers will employ physicians to provide general health care to employees. In any event, creating a significant breach in the otherwise sturdy wall of co-employee immunity is not the privilege of an intermediate appellate court.

We conclude that Hawksby may not maintain a tort action against Dr. DePietro based on his failure to diagnose the cancer during his treatment of Hawksby's compensable injury. Our holding is limited to these facts, and we neither express nor imply an opinion regarding negligent treatment of a non-compensable injury, illness or condition.

Affirmed.[1]

---

[1] The order entered in the Workers' Compensation Court is not before us. As indicated, it was an order approving a settlement as authorized in *N.J.S.A.* 34:15–20. It does not appear, therefore, that the compensability of the alleged misdiagnosis was actually adjudicated. Hawksby was represented by a different set of attorneys in the compensation case.