No. 83,739

MICHAEL D. ROBINETT, *Appellant,* v. THE HASKELL COMPANY, *Appellee.*

(12 P.3d 411)

 Opinion filed October 27, 2000 

*Craig J. Altenhofen,* of Harper, Hornbaker, Altenhofen & Opat, Chartered Lawyers, of Junction City, was on the brief for appellant.

*Lawton M. Nuss,* of Clark, Mize & Linville, Chartered, of Salina, argued the cause, and *Mickey W. Mosier,* of the same firm, was with him on the brief for appellee.

*Donald W. Vasos,* of Law Offices of Donald W. Vasos, of Fairway, argued the cause and *David A. Hoffman,* of the same firm, was with him on the brief for *amicus curiae* Kansas Trial Lawyers Association.

*Michael J. McDaniel,* of Hall, Levy, DeVore, Bell, Ott & Kritz, of Coffeyville, was on the brief for *amicus curiae* Kansas Association of Defense Counsel.

*Donald A. McKinney* and *Donald Andersen,* of Andersen & McKinney, of Wichita; *Michael L. Snider* and *J. Joseph Seiwert,* of Snider & Seiwert, of Wichita; and *Bradley J. Prochaska* and *Timothy A. Emerson,* of Law Offices of Prochaska, Scott & Craig, of Wichita, were on the brief for *amicus curiae* DeBruce Elevator Explosion Victims.

The opinion of the court was delivered by

DAVIS, J.: The plaintiff, Michael Robinett, was injured while performing work under a subcontract between his employer, Stanley Jones Corporation (Stanley Jones), and the defendant, The Haskell Company (Haskell). Under the terms of the contract between Stanley Jones and Haskell, Stanley Jones provided workers compensation coverage for its employees and paid such compensation to the plaintiff. Thereafter, the plaintiff sued Haskell in tort for injuries sustained. The plaintiff appeals from a summary judgment ruling

that Haskell was the statutory employer of the plaintiff, barring his tort action under the exclusive remedy rule. The question we must resolve is whether the provisions of K.S.A. 1999 Supp. 44-503(g), which relieve a principal contractor of responsibility for providing workers compensation where the subcontractor has secured such coverage, opens the principal contractor to third-party tort actions by employees of the subcontractor.

The undisputed facts establish that Armour Swift-Eckrich employed Haskell as its principal contractor for the construction of a new facility in Geary County. Haskell is a design/build firm that provides architectural, engineering, construction, and real estate services. Haskell subcontracted with the plaintiff's employer, Stanley Jones, for installation of heating, air conditioning, and mechanical work on the new project.

On November 13, 1996, the plaintiff was injured on the job site when he stepped into an uncovered floor drain, causing serious injury to his right foot, right leg, and back. The plaintiff claimed that this injury was the direct result of the wrongful and negligent act of an employee of Haskell, for which Haskell would be liable under the doctrine of respondeat superior.

Stanley Jones provided worker compensation coverage for all its employees through Lumberman's Underwriting Alliance. After recovering worker compensation benefits, the plaintiff filed a tort action against Haskell for damages. Haskell filed a motion for summary judgment, arguing that it qualified as the plaintiff's statutory employer under K.S.A. 1999 Supp. 44-503(a) and was therefore immune from suit under the Kansas Workers Compensation Act's exclusive remedy rule contained in K.S.A. 44-501(b). In his response and now on appeal, the plaintiff argues that K.S.A. 1999 Supp. 44-503(g) which exempts general contractors from providing workers compensation benefits for the employees of subcontractors where the subcontractor provides such benefits, renders Haskell liable.

In granting Haskell summary judgment, the trial court concluded that the plaintiff's tort action was barred by the exclusive remedy provisions of K.S.A. 44-501(b), thereby rejecting the plaintiff's contention that K.S.A. 1999 Supp. 44-503(g) authorized his

tort action. The plaintiff appealed to the Court of Appeals. We transferred the appeal on our own motion pursuant to K.S.A. 20-3018(c).

## Analysis and Discussion

The plaintiff's argument rests upon a 1994 amendment to 44-503 of the Kansas Workers Compensation Act adding subsection (g), which relieves the principal contractor of its obligation to provide workers compensation coverage for employees of a subcontractor where such coverage is secured by the subcontractor. Before discussing the amendment and its effect, the following background and context is helpful in framing the question we must resolve.

### Exclusive Remedy and Subcontracting Provisions

K.S.A. 44-501(b) contains the exclusive remedy provision upon which the trial court based its decision for Haskell. In pertinent part, the statute provides:

"Except as provided in the workers compensation act, no employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable under the workers compensation act nor shall an employer be liable to any third party for any injury or death of an employee which was caused under circumstances creating a legal liability against a third party and for which workers compensation is payable by such employer."

Thus, under K.S.A. 44-501(b), an employer is not liable in tort for any injury in which compensation is recoverable under the Kansas Workers Compensation Act. The remedy provided in the Kansas Workers Compensation Act is exclusive and a worker may not maintain a common-law action for damages founded upon negligence against a party from whom he or she could have recovered compensation from that employer under the Act. *Woods v. Cessna Aircraft Co.*, 220 Kan. 479, 482, 553 P.2d 900 (1976).

Subcontracting under the Kansas Workers Compensation Act is addressed by the provisions of K.S.A. 1999 Supp. 44-503. K.S.A. 1999 Supp. 44-503(a) provides:

"Where any person (in this section referred to as principal) undertakes to execute any work which is a part of the principal's trade or business or which the principal has contracted to perform and contracts with any other person (in this

section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any worker employed in the execution of the work any compensation under the workers compensation act which the principal would have been liable to pay if that worker had been immediately employed by the principal; and where compensation is claimed from or proceedings are taken against the principal, then in the application of the workers compensation act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the worker under the employer by whom the worker is immediately employed."

K.S.A. 1999 Supp. 44-503(a) has been a part of Kansas workers compensation law in essentially the same form since its enactment in 1927. See L. 1927, ch. 232, § 3. The statute extends the application of the Kansas Workers Compensation Act to certain individuals or entities who are not the immediate employers of the injured workers, but rather are "statutory employers." *Bright v. Cargill, Inc.*, 251 Kan. 387, 393, 837 P.2d 348 (1992). The impact of K.S.A. 1999 Supp. 44-503 is to allow an employee of a contractor to recover workers compensation benefits from either his immediate employer or the principal contractor, so long as the work being done by the employee is either an integral part of the principal's trade or business or is work that would ordinarily have been done by an employee of the principal. See *Cobble v. Williams*, 177 Kan. 743, 750-51, 282 P.2d 425 (1955). The purpose for this statute is " 'to prevent employers from evading liability under the act by the device of contracting with outsiders to do work which they have undertaken to do as a part of their trade or business.' (Citations omitted.)" *Zehring v. Wickham*, 232 Kan. 704, 707, 658 P.2d 1004 (1983). A statutory employer is immune from a common-law suit for damages due to the exclusive remedy provision even when the injured employee chooses to receive workers compensation benefits from his or her immediate employer rather than the statutory employer because the employee could have recovered compensation from the statutory employer. See *Bright v. Cargill, Inc.*, 251 Kan. at 392-393; *Zehring v. Wickham*, 232 Kan. at 707.

*Pre-1994 Subcontracting Provisions*

Prior to 1994, the law in this area would have been clear. The trial court found, and neither party seriously disputes, that Haskell,

as the principal contractor, would qualify as the plaintiff's "statutory employer" under K.S.A. 44-503(a). The trial court found that work done by subcontractor Stanley Jones was part of Haskell's trade or business and, further, that the work was part of a contract that Haskell had contracted to do for a third party, Armour Swift-Eckrich. On appeal, the plaintiff does not argue that this finding was incorrect.

Thus, under the law as it existed before 1994, Haskell would have been liable to pay workers compensation benefits to the plaintiff as if the plaintiff were a direct employee. See K.S.A. 44-503(a). The plaintiff could have claimed benefits from either Haskell or his direct employer, Stanley Jones, assuming Stanley Jones provided such benefits. K.S.A. 44-503(a), (c). Conversely, both Haskell, as a statutory employer, and Stanley Jones, as the direct employer, would be immune from a negligence suit under the exclusive remedy provision as the plaintiff could have recovered compensation from either one under the Kansas Workers Compensation Act. See *Woods v. Cessna Aircraft Co.*, 220 Kan. at 482.

*1994 Amendment*

In 1994, K.S.A. 44-503 was amended with the addition of subsection (g). L. 1994, ch. 288, § 1. K.S.A. 1999 Supp. 44-503(g) provides:

"Notwithstanding any other provision of this section, in any case where the contractor (1) is an employer who employs employees in an employment to which the act is applicable, or has filed a written statement of election with the director to accept the provisions of the workers compensation act pursuant to subsection (b) of K.S.A. 44-505, and amendments thereto, to the extent of such election, and (2) has secured the payment of compensation as required by K.S.A. 44-532, and amendments thereto, for all persons for whom the contractor is required to or elects to secure such compensation, as evidenced by a current certificate of workers compensation insurance, by a certification from the director that the contractor is currently qualified as a self-insurer under that statute, or by a certification from the commissioner of insurance that the contractor is maintaining a membership in a qualified group-funded workers compensation pool, then, the principal shall not be liable for any compensation under this or any other section of the workers compensation act for any person for which the contractor has secured the payment of compensation which the principal would otherwise be liable for under this section and such person shall have no right to file a claim against or otherwise

proceed against the principal for compensation under this or any other section of the workers compensation act. In the event that the payment of compensation is not secured or is otherwise unavailable or in effect, then the principal shall be liable for the payment of compensation. No insurance company shall charge a principal a premium for workers compensation insurance for any liability for which the contractor has secured the payment of compensation."

The effect of subsection (g) is that if a subcontractor has secured the payment of workers compensation benefits for its employees, the principal contractor is not liable for such benefits. Instead, the principal contractor is only secondarily liable for payment of benefits in the event that the subcontractor fails to provide benefits. K.S.A. 1999 Supp. 44-503(g).

In the case at hand, Stanley Jones, the plaintiff's direct employer, had secured workers compensation benefits for the plaintiff. Therefore, under K.S.A. 1999 Supp. 44-503(g), Haskell was not liable for benefits. The question, however, is whether because Haskell was not liable for benefits, Haskell could be liable for its own negligence in tort notwithstanding the fact that Haskell would still qualify as a statutory employer under K.S.A. 1999 Supp. 44-503(a).

*Scope of Review*

Resolution of this question necessarily requires interpretation of both K.S.A. 1999 Supp. 44-501 and K.S.A. 1999 Supp. 44-503, as well as the Kansas Workers Compensation Act as a whole. The interpretation of a statute is a question of law, and our review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

*Rules of Statutory Construction*

The fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained, and when a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998). Where the face of the statute leaves its construction uncertain, the court may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accom-

plished, and the effect the statute may have under the various constructions suggested. *Brown v. U.S.D. No. 333*, 261 Kan. 134, 142, 928 P.2d 57 (1996). The legislative intent is to be determined from a general consideration of the entire act, and effect must be given, if possible, to the entire act and every part thereof, and it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643-44, 941 P.2d 1321 (1997). The provisions of the Kansas Workers Compensation Act are to be liberally construed for the purpose of bringing a worker under the Act whether or not desirable for the specific individual's circumstances, and should be applied impartially to both employers and employees. *Bright v. Cargill, Inc.*, 251 Kan. at 393.

*Application of Rules*

The plain language of K.S.A. 1999 Supp. 44-503(g) does not specifically address the question of whether a principal contractor who is not primarily liable for workers compensation benefits may be sued for its own negligence in tort. The plain language of the statute does state that where a subcontractor has secured workers compensation benefits for its employees, an injured employee "shall have no right to . . . proceed against the principal for compensation under this or any other section of the workers compensation act." However, the principal contractor still remains liable for ultimate payment in the event that the contractor's compensation is not secured or is otherwise unavailable or not in effect. K.S.A. 1999 Supp. 44-503(g). Thus, it is not unambiguously clear whether relieving the principal contractor of responsibility for providing coverage subjects the principal to tort action by employees of the subcontractor.

The historical background and circumstances attending the passage of K.S.A. 1999 Supp. 44-503(g) are of little help. Senate Bill 767, L. 1994, ch. 288, § 1, which amended K.S.A. 44-503 to add section (g), originally affected only owner-operators of motor carriers, and contained none of the language which eventually made its way into the statute. Motor carriers who leased trucks and driv-

ers from independent contractors under long-term contracts felt that they were being placed at a competitive disadvantage as opposed to motor carriers in other states because they were required to include the cost of workers compensation for these independent contractors in their operating expenses. See Testimony of Mary Turkington, Executive Director of the Kansas Motor Carriers Association, Before the House Committee on Labor and Industry, March 15, 1994. The original version of S.B. 767 sought to remedy this problem by completely exempting motor carriers from the workers compensation requirements of K.S.A. 44-503(a). The original version of the bill stated that the owner-operator of a motor vehicle was not a contractor or an employee of the licensed motor carrier, and the licensed motor carrier was not the principal or the employer of the owner-operator. See S.B. 767, Senate Committee on Commerce, February 14, 1994.

In both the Senate and House committees, critics argued that the bill was special interest legislation which would give special treatment to one industry and adversely impact the workers compensation system. See Minutes of the Senate Committee on Commerce, February 25, 1994; Minutes of the House Committee on Labor and Industry, March 16, 1994. Nevertheless, both committees favorably recommended the bill for passage. However, the House amended the bill by gutting the original language completely. See House J., 1994, pp. 2034-35. In its place, the House inserted the language that makes up the statute today. House J., 1994, p. 2035. There is no record for the reason behind the amendment. However, the amendment changed S.B. 767 from special interest legislation which exempted one industry from liability for workers compensation into general legislation which enacted a typical "contractor-under" statute.

In its *amicus* brief, the Kansas Association of Defense Counsel contends that S.B. 767 was enacted to make Kansas employers who enter into subcontracts more competitive with similar companies in other states by eliminating duplicative workers compensation premiums, and that it is "inconceivable" to think that the legislature intended to make the same companies liable in tort by abrogating the defense available under the exclusive remedy rule.

There is some merit to this argument based upon the express pro-
visions of K.S.A. 1999 Supp. 44-503(g), which provides that "[n]o
insurance company shall charge a principal a premium for workers
compensation insurance for any liability for which the contractor
has secured the payment of compensation." However, in light of
the drastic and complete changes made by the House to the orig-
inal bill, it is highly questionable whether the intent expressed in
legislative history regarding introduction of the original bill is re-
liable. Moreover, K.S.A. 1999 Supp. 44-503 as a whole says nothing
about the exclusive remedy rule. Rather, until 1994, K.S.A. 44-
503(a) made principal contractors liable for its employees as well
as the subcontractor's employees. It is this liability for the subcon-
tractor's employees which triggered the exclusive remedy rule
found in K.S.A. 1999 Supp. 44-501.

The plaintiff argues that the exclusive remedy rule in Kansas
requires that parties who are not liable for workers compensation
benefits not have immunity because there is no quid pro quo on
their part. In other words, the provisions of K.S.A. 1999 Supp. 44-
503(g) relieve the statutory employer under certain conditions
from providing coverage but gives no comparable benefit to the
employee. The plaintiff points to this court's statement in *Bright
v. Cargill, Inc.*, wherein we found that LSI, an employer of another
contractor in the case, was not shielded from liability. Noting that
LSI had no workers compensation responsibility to Bright, we
stated: "A defendant has no workers compensation responsibility
to a plaintiff who is not its employee. A defendant should not be
relieved from its normal respondeat superior liability, while at the
same time giving no accompanying benefit to the workers com-
pensation system." 251 Kan. at 414. The plaintiff argues that sim-
ilarly, a defendant who is statutorily shielded from liability for
workers compensation benefits should not be allowed to take ad-
vantage of the exclusive remedy provision to escape liability in tort
for its actions.

It must be noted that the very basis for our decision in *Bright*
regarding LSI was that LSI was not the employer of Bright. At the
same time, in *Bright* we affirmed the principle under 44-503(a)
that one determined to be a statutory employer is immune from a

third-party tort action by its statutory employee. 251 Kan. at 387, Syl. ¶ 2. In the case we now address, there is no question concerning the status of the plaintiff. Unlike the situation in *Bright*, the plaintiff in this case is the statutory employee of the principal contractor, Haskell, as well as the employee of the subcontractor, Stanley Jones. Thus, even under the provisions of K.S.A. 1999 Supp. 44-503(g), the principal contractor, Haskell, remains contingently liable for workers compensation coverage for employees of the subcontractor, including the plaintiff. Therefore, *Bright* provides little if any support for the plaintiff's position.

The plaintiff's argument that a defendant who is only secondarily liable for workers compensation benefits should not be immune from tort suits is supported by decisions in a number of jurisdictions. See *Colon Nunez v. Horn-Linie*, 423 F.2d 952, 955-57 (1st Cir. 1970) (applying Puerto Rico law); *Ryan v. New Bedford Cordage Co.*, 421 F. Supp. 794, 798 (D. Vt. 1976); *Baldwin Co. v. Manner*, 224 Ark. 348, 352-53, 273 S.W.2d 28 (1954); *Great Western Sugar Co. v. Erbes*, 148 Colo. 566, 367 P.2d 329 (1961); *Fonseca v. Pacific Constr. Co.*, 54 Haw. 578, 583-84, 513 P.2d 156 (1973); *Andrews v. Robinson Steel Constr. Co.*, 355 S.W.2d 890, 892-93 (Mo. 1962) (applying Illinois law); *Piper v. Lockwood Water Users Ass'n*, 175 Mont. 242, 244-47, 573 P.2d 646 (1978); *Boettner v. Twin City Constr. Co.*, 214 N.W.2d 635, 638-39 (N.D. 1974). Until recently, this view, whether based on statutory language or policy, was the general rule. See 6 Larson's Workers Compensation Law § 111.04[1][b] (2000). The rationale behind this rule is that the secondary liability of the principal does not become effective until the contractor fails to provide benefits, and where the contractor does actually provide benefits, there is no quid pro quo on the part of the principal which would entitle the principal to immunity. See *Fonseca*, 54 Haw. at 583; *Andrews*, 355 S.W.2d at 893.

However, there has been a marked trend in more recent times toward granting immunity to the principal contractor when the subcontractor was insured and even when compensation has been actually paid under the subcontractor's policy. 6 Larson's Workers Compensation Law § 111.04[1][b] (2000). See *Washington Metro. Transit Auth. v. Johnson*, 467 U.S. 925, 938-41, 81 L. Ed. 2d 768,

104 S. Ct. 2827 (1984) (interpreting the federal Longshoremen's and Harbor Workers' Compensation Act); *Matthews Corp. v. Peters*, 610 So. 2d 111, 112 (Fla. Ct. App. 1992); *England v. Beers Constr. Co.*, 224 Ga. App. 44, 45, 479 S.E.2d 420 (1996); *Doubleday v. Boyd Constr. Co.*, 418 So. 2d 823, 826 (Miss. 1982); *Brittingham v. Williams Sign Erectors*, 299 S.C. 259, 262, 384 S.E.2d 319 (1989). In *Washington Metro. Transit Auth.*, the United States Supreme Court held that a general contractor was immune from suit where it provided secondary coverage under the Longshoreman's and Harbor Workers' Compensation Act because the general contractor guaranteed the primary obligation of the subcontractors. 467 U.S. at 938-41. This contingent liability of the principal contractor as well as its role as statutory employer are sufficient to entitle the principal contractor to immunity. Dissenting, now-Chief Justice Rehnquist, joined by Justices Brennan and Stevens, argued that such a result was nowhere to be found in the language of the statute, and instead:

> "The Court today takes a 1927 statute and reads into it the 'modern view' of worker's compensation, whereby both the contractor and the subcontractor receive immunity from tort suits provided somebody secures compensation for injured employees of the subcontractor. In practical terms, the result is undoubtedly good both for the construction industry and for our already congested district courts. The result may even make overall economic sense. See 2A A. Larson, Law of Workmen's Compensation § 73.31(b) (1982). But one can hardly pretend that it 'adhere[s] closely to what Congress has written.' [Citation omitted.]" 467 U.S. at 941-42.

It should be noted that Congress later amended the Longshoreman's and Harbor Workers' Compensation Act to provide for immunity only where the general contractor is actually required to pay compensation benefits. 98 Stat. 1639, §§ 4(a) and 5(a). See *Meiggs v. Associated Builders, Inc.*, 545 A.2d 631, 633 (D.C. 1988). Nevertheless, the result reached by the *Johnson* court is still consistent with the modern trend in workers compensation law. See 6 Larson's Workers Compensation Law § 111.04[1][b] (2000).

In his treatise on Workers Compensation Law, Professor Larson favors the modern rule, stating:

"The object of the 'contractor-under' statutes is to give the general contractor an incentive to require subcontractors to carry insurance. But if the general contractor does conscientiously insist on this insurance, its reward, [under cases which do not give immunity] is loss of exemption from third-party suit. A sounder result would seem to be the holding that the overall responsibility of the general contractor for getting subcontractors insured, and its latent liability for compensation if it does not, should be sufficient to remove it from the category of 'third party.' The general contractor is under a continuing potential liability; it has thus assumed a burden in exchange for which it might well be entitled to immunity from damage suits, regardless of whether on the facts of a particular case actual liability exists. This burden may also be translated into financial terms, as was done by the First Circuit [in *Musick v. Puerto Rico Tel. Co.*, 357 F.3d 603 (1966)] when it pointed out that the general contractor, by insisting that the subcontractor carry compensation insurance, imposes a cost on the subcontractor which the subcontractor will pass on to the contractor in its charges under the subcontract." 6 Larson's Workers Compensation Law § 111.04[1][b] (2000).

We believe the above rationale to be sound and consistent with the overall purpose and specific provisions of K.S.A. 1999 Supp. 44-503. This law recognizes the primary responsibility of the principal contractor in providing worker compensation coverage not only for its immediate employees but also for its statutory employees. See *Bright v. Cargill*, Inc., 251 Kan. at 393. This responsibility arises because the work being done is either an integral part of the principal's trade or business or is work that would ordinarily have been done by an employee of the principal. See *Cobble v. Williams*, 177 Kan. at 750. The purpose of the statute is " 'to prevent employers from evading liability under the act by the device of contracting with outsiders to do work which they have undertaken to do as a part of their trade or business.' " *Zehring v. Wickham*, 232 Kan. at 707.

K.S.A. 1999 Supp. 44-503(g) continues to recognizes this responsibility by referring to the principal contractor as the one who "would otherwise be liable [for the payment of compensation] under this section." Moreover, the 1994 amendment provides that the principal contractor remains liable for such coverage "[i]n the event that the payment of compensation is not secured or is otherwise unavailable or in effect." K.S.A. 1999 Supp. 44-503(g). In providing for this contingent liability, the legislature chose not to abandon the concept of statutory employer, instead placing the

responsibility on the statutory employer to either provide compensation itself or to see that such compensation is provided by the direct employer.

Subjecting the principal contractor as the statutory employer to tort liability for employees of the subcontractor would be an extreme departure from the law predating the 1994 amendment. Such a departure we believe should not be predicated upon the assumption that since the principal contractor is relieved of its coverage responsibility, it is therefore subject to third party tort actions by its statutory employees or employees of its subcontractor. Such a change, if intended, would surely have been expressly provided for by the legislature.

We also believe that the manner in which the legislature chose to relieve the principal contractor of primary responsibility for workers compensation coverage is significant. K.S.A. 1999 Supp. 44-503(g) does not mandate that the subcontractor provide workers compensation coverage. Instead, the legislature leaves the coverage question up to the subcontractor and the principal contractor, recognizing that primary responsibility lies with the principal contractor. Where coverage is secured by the subcontractor, the principal contractor remains only contingently liable. By so providing, the legislature encourages the principal in his or her negotiations with the subcontractor to require the subcontractor to secure workers compensation coverage of its direct employees. In this case, the contract between Haskell and Stanley Jones required that Stanley Jones, as the direct employer of the plaintiff, provide such coverage.

The cost of such coverage becomes a factor in the negotiations of the parties and is factored into the contract, with the result that between the parties the cost of coverage is shared, if not paid for, by the principal contractor. Thus, the principal is still providing quid pro quo for its immunity. If the principal does not obtain immunity, there is really no incentive for the employer to hire a contractor with workers compensation coverage, especially where the principal will likely have to pay a higher price for such a contractor as opposed to a contractor who is uninsured. In fact, the principal who does so will be worse off in that not only will it be

subject to potential tort liability, it will also be potentially liable for workers compensation benefits if the contractor's insurance should become unavailable. Immunity advances the entire purpose of K.S.A. 1999 Supp. 44-503 by encouraging principal contractors to fulfill their ultimate responsibility for coverage by providing for such coverage in their negotiations with subcontractors. Immunity also insures that the principal will not be worse off for its decision to hire insured contractors. See Larson's Workers Compensation Law § 111.04[1][b] (2000).

Given the primary responsibility of the principal to either provide workers compensation coverage or contract for it to be provided by the subcontractor, the remaining contingent liability of the principal, the lack of any express language governing third-party tort liability in K.S.A. 1999 Supp. 44-503, and the fact that immunity furthers the policy of the statute to ensure that workers are not deprived of workers compensation coverage, we conclude that in passing K.S.A. 1999 Supp. 44-503, the legislature did not intend to subject principal contractors to tort liability for injuries to the employees of subcontractors, even where the principal contractor is not liable for workers compensation benefits because such coverage is secured by the subcontractor.

Affirmed.