No. 117,352

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

AMY ENDRES, Individually and on Behalf of the Heirs-At-Law of
STEVEN L. ENDRES, Deceased, and as the Administrator of the Estate of STEVEN L.
ENDRES, Deceased,
*Appellants*,

v.

KIMBERLY A. YOUNG, RN, and CREEKSTONE FARMS PREMIUM BEEF, LLC,
*Appellees*.

SYLLABUS BY THE COURT

1.

Whether a district court erred by granting a motion to dismiss is a question of law subject to our unlimited review.

2.

In reviewing a motion to dismiss, we must view the well-pleaded facts in a light most favorable to the plaintiff and assume as true those facts and any inferences reasonably drawn from them. If those facts and inferences state any claim upon which relief can be granted, then dismissal is improper.

3.

An appellate court will not resolve any factual disputes when deciding a motion to dismiss for failure to state a claim. Dismissal of a lawsuit is proper only when the allegations in the petition clearly demonstrate the plaintiff does not have a claim.

1

4.

If an injured employee could have recovered compensation for the injury under the Kansas Workers Compensation Act, the law commands that the employee cannot maintain an action against his or her employer or another employee for damages based on common law negligence.

Appeal from Cowley District Court; LADONNA L. LANNING, judge. Opinion filed April 20, 2018. Reversed and remanded.

*Ryan A. Prochaska*, *Bradley J. Prochaska*, and *James R. Howell*, of Prochaska, Howell & Prochaska LLC, of Wichita, for appellants.

*Steven C. Day* and *Patrick J. Murphy*, of Woodard, Hernandez, Roth & Day, LLC, of Wichita, for appellees.

Before STANDRIDGE, P.J., HILL and BUSER, JJ.

HILL, J.: In this case, a widow appeals the dismissal of her tort claim against a company nurse and her employer for misdiagnosing her deceased husband's heart condition at work. The district court, relying upon an old case as precedent as well as offering no consideration of the intervening major revisions of the Kansas Workers Compensation Act, ruled that her lawsuit was barred by the exclusive remedy of workers compensation. The trouble with ancient precedent is that the law is never static. Each wave of legislation and each new appellate decision changes the law's seascape. What was once legally possible, in time, becomes legally impossible. Because the fundamental changes in the Kansas Workers Compensation Act cannot be ignored, we hold the precedent the district court relied upon is no longer reliable. We do not know what the future holds in store for this action but we do know it must survive a motion to dismiss. We reverse and remand.

*Steve Endres has chest pains at work followed by his death after work.*

We have gleaned the following facts from a fair reading of the petition filed in this case. As we point out later, under our civil procedure rules, they must serve as the only facts that the district court could rely upon when it considered the Defendants' joint motion to dismiss.

Around 7:30 a.m., while he was working at Creekstone Farms Premium Beef, LLC, Steven Endres, the director of plant operations, began to experience chest pains. Over the noon hour, he sought treatment from the company nurse, Kimberly Young, RN. She noted he had mildly elevated blood pressure, a low pulse, and he was mildly dehydrated. Young diagnosed Endres with gastroesophageal reflux disease. Endres returned to his usual duties. That evening, after work, Endres went to the golf course, suffered a heart attack, and died. The emergency room doctor noted that Endres was at a cardiac standstill (asystole) the entire time he was in the emergency room. His time of death is listed as 8 p.m.

Endres' widow, Amy Endres, on behalf of herself, the heirs, and as administrator of Steven's estate, brought a medical negligence lawsuit against both Nurse Young and Creekstone. She alleged that because of Young's deviation from the standard of care, Endres suffered loss:

> "As a result of defendants' deviations from the standard of care in failing to properly treat Mr. Endres' acute coronary syndrome (ACS), including but not limited to, transferring Mr. Endres to the hospital, Mr. Endres died.
> "Had Steven Endres' condition been properly assessed, diagnosed, monitored and appropriate care and treatment been provided by defendants, Steven Endres would not have endured significant avoidable pain, suffering and death. Accordingly, defendants breached their duty to Steven Endres, which breach caused or contributed to the injury and death of Steven Endres.

3

"After his evaluation by Kimberly Young, RN and before his death, and as a direct result of the deviations from the standard of care by defendants, Steven Endres suffered permanent injury, pain, suffering, mental anguish, medical expenses and other losses."

The Defendants responded by contending that the Plaintiffs' exclusive remedy was through the Kansas Workers Compensation Act and not through a tort action. Both moved to dismiss the lawsuit for failure to state a claim. In their view, this lawsuit was barred by law. The district court agreed and granted the motion to dismiss. This appeal followed.

*It is significant that this was a motion to dismiss.*

The district court dismissed the petition for failure to state a claim under K.S.A. 2016 Supp. 60-212(b)(6). This is the procedural equivalent to saying, "We have read your petition and say, so what? Since there is no legal significance to your claim, your lawsuit must be dismissed." Because this case centers on a motion to dismiss, certain rules guide our review.

Whether a district court erred by granting a motion to dismiss is a question of law subject to our unlimited review. *Cohen v. Battaglia*, 296 Kan. 542, 545, 293 P.3d 752 (2013). During our review, caselaw commands that we must view the well-pleaded facts in a light most favorable to the plaintiff and assume as true those facts and any inferences reasonably drawn from them. If those facts and inferences state *any* claim upon which relief can be granted, then dismissal is improper. See *Cohen*, 296 Kan. at 545-46; K.S.A. 2016 Supp. 60-212. We will not resolve any factual disputes when deciding a motion to dismiss for failure to state a claim. Dismissal of a lawsuit is proper *only* when the allegations in the petition clearly demonstrate the plaintiff does not have a claim. See *Steckline Communications, Inc. v. Journal Broadcast Group of Kansas, Inc.*, 305 Kan. 761, Syl. ¶ 2, 388 P.3d 84 (2017).

Interestingly, this is a rather unique case where the employer is arguing that the worker (or his estate) is entitled to workers compensation benefits. Basically, the Defendants contend that the Plaintiffs have not stated a claim for which relief may be granted because the exclusive remedy provision of the Kansas Workers Compensation Act, K.S.A. 44-501 et seq., precludes the claims.

The law is clear on this point. If an injured employee could have recovered compensation for the injury under the Act, the law commands that the employee cannot maintain an action against his or her employer or another employee for damages based on common law negligence. Indeed, K.S.A. 2015 Supp. 44-501b(d) states clearly that no civil suit is permitted if "compensation is recoverable under the workers compensation act." See *Robinett v. Haskell Co.*, 270 Kan. 95, 97, 12 P.3d 411 (2000). The exclusive remedy provision prevents double recovery by an injured worker. *Scott v. Hughes*, 281 Kan. 642, 646, 132 P.3d 889 (2006).

After taking all of these rules into account, this means that in order to persuade us to affirm the court's grant of their motion to dismiss, Nurse Young and Creekstone must show that Endres (or his heirs) could have recovered compensation under the Act. See *Wheeler v. Rolling Door Co.*, 33 Kan. App. 2d 787, 791, 109 P.3d 1255 (2005). If there can be no recovery under the Act, then the exclusive remedy provision of the law does not apply and the motion to dismiss should not have been granted.

*We begin with the district court's ruling.*

In granting the Defendants' motion to dismiss, the district court ruled that *Scott v. Wolf Creek*, 23 Kan. App. 2d 156, 928 P.2d 109 (1996), applied and therefore controlled the outcome of this case. In *Scott*, the estate and heirs of a worker who had died from a heart attack sued his employer and three coemployees claiming medical malpractice. The lawsuit alleged that Gary R. Scott had lost a chance of surviving a heart attack due to the

5

negligent medical treatment he received when he suffered a heart attack while working at the Wolf Creek power plant.

The district court in *Scott* granted summary judgment to the employer and the co-employees, holding the exclusive remedy of workers compensation barred a tort claim. On review, this court upheld the grant of summary judgment. In dicta, the *Scott* panel agreed with the employer and the coemployees that had the plaintiffs sought workers compensation benefits for Mr. Scott's heart attack, the "heart amendment would likely have barred their claim." 23 Kan. App. 2d at 158. The claim, however, of the defendants' negligence which caused or contributed to Scott's death by reducing his chance of surviving the heart attack was not barred by the heart amendment. Therefore, workers compensation benefits for such a claim were possible. And, since benefits were possible, the exclusive remedy law precluded the tort claim.

The Defendants here persuaded the district court that since *Scott* was a medical negligence tort case which sought recovery for the loss of a chance for survival—which was barred by the exclusive remedy provision in the Kansas Workers Compensation Act—the medical negligence tort case here, seeking recovery for a misdiagnosis that ended in a heart attack after work, should be barred as well. We are not so persuaded.

We pause here to note that the "heart amendment" mentioned in *Scott* is an enactment found in K.S.A. 2017 Supp. 44-501(c)(1). It specifically precludes workers compensation coverage for workers with coronary or coronary artery disease unless caused by exertion that was more than the employee's usual work in the course of the employee's regular employment. We will examine the heart amendment in greater detail later. With the massive changes in the Kansas Workers Compensation Act made in the last few years, we find the persuasive power of the *Scott* holding, horizontal precedent for us at best, to be greatly diminished.

6

The Act was overhauled in 2011. It is fair to say that the revisions were made in an effort to limit workers compensation benefits and not to enlarge them. Important provisions have been changed since *Scott*. They dealt with the concepts of injury, accident, and causation. When we examine these new provisions, while keeping in mind that we are considering a motion for dismissal on the pleadings, we conclude the district court erred when it granted this motion to dismiss. Put simply, *Scott* has lost its luster.

*Changes in the Kansas Workers Compensation Act appear to preclude recovery here.*

First we begin with one of the basics of workers compensation law: the term "injury." At all relevant times, in both the older and newer versions of the law, "injury" has meant a "lesion or change in the physical structure of the body, causing damage or harm thereto." K.S.A. 2015 Supp. 44-508(f)(1); K.S.A. 44-508(e) (Furse 1993). This leads us to the question, what was Endres' injury here? The claimed misdiagnosis itself cannot, by definition, be the injury because it is not a change in the physical structure of the body. The injury suffered here was a change in Endres' heart condition—his heart attack. This becomes increasingly important when we consider the new provisions of the term "accident."

Next, perhaps the most dramatic change in the Act focuses on the term "accident." Now, an "accident" must cause the injury. K.S.A. 2015 Supp. 44-508(f)(1) provides, "Personal injury or injury may occur *only by accident*, repetitive trauma or occupational disease as those terms are defined." (Emphasis added.) Clearly, there are no allegations in the petition here of repetitive trauma or occupational disease causing Endres' death, so we must look at injury by accident.

Before it was changed, K.S.A. 44-501(a) (Furse 1993) read, "personal injury by accident." There was no "only by accident" in the law then. This is important here because according to the Plaintiffs' petition, Nurse Young's negligence caused Endres'

7

heart attack and death. If the claimed negligence—Nurse Young's alleged misdiagnosis—is to be compensable under the Act, then that negligence must fit within the definition of accident. A look at the two versions of the statute is helpful at this point.

A contrast of the 1993 and 2015 versions of the definition of "accident" illustrates the great differences between the two versions of the law. We begin with the older and more nebulous version:

> "'Accident' means an undesigned, sudden and unexpected event or events, usually of an afflictive or unfortunate nature and often, but not necessarily, accompanied by a manifestation of force. *The elements of an accident, as stated herein, are not to be construed in a strict and literal sense, but in a manner designed to effectuate the purpose of the workers compensation act that the employer bear the expense of accidental injury to a worker caused by the employment*." (Emphasis added.) K.S.A. 44-508(d) (Furse 1993).

Now, the newer, more precise, version:

> "'Accident' means an undesigned, sudden and unexpected *traumatic* event, usually of an afflictive or unfortunate nature and often, but not necessarily, accompanied by a manifestation of force. *An accident shall be identifiable by time and place of occurrence, produce at the time symptoms of an injury, and occur during a single work shift. The accident must be the prevailing factor in causing the injury*." (Emphasis added.) K.S.A. 2015 Supp. 44-508(d).

It is easy to see how a misdiagnosis could be considered an "accident" under the 1993 definition. The term accident was "not to be construed in a strict and literal sense, but in a manner designed to effectuate the purpose of the workers compensation act that the employer bear the expense." K.S.A. 44-508(d) (Furse 1993). But the current law replaced that language with more exacting requirements.

8

Now, the law requires that the accident must be identifiable by time and place, produce symptoms at the time of an injury, and occur during a single work shift. K.S.A. 2015 Supp. 44-508(d). Here, the alleged misdiagnosis was identifiable by time and place and occurred during a single work shift—around noon in Nurse Young's office when she diagnosed Endres with reflux disease. He had symptoms of chest pain when he went to see her.

But we see nothing in the petition that shows the alleged misdiagnosis "produce[d] at the time symptoms of an injury." The petition simply does not allege that the misdiagnosis itself produced, at that time of its making, any symptoms. After all, Endres' heart attack occurred at the golf course, after work. We cannot stretch the words of this statutory definition of accident to cover these facts. It is clear that a misdiagnosis such as the one alleged here is not contemplated by this current statutory definition of accident. To be compensable under the Act, personal injury must occur only by accident. An important component of accident is the concept of trauma. We now look at the inclusion of trauma in the 2011 revisions.

The word "traumatic" was added to the definition of "accident" in 2011. Previously, accident was an "undesigned, sudden and unexpected event or events." The Legislature added "traumatic" and deleted "or events." We have already noted that the Legislature added language requiring that the accident be "identifiable by time and place of occurrence" and "occur during a single work shift." At the same time, it deleted language referring to an accident occurring as a result of a series of events. See L. 2011, ch. 55, § 5.

We note that reference to a "traumatic event" was used in various Kansas Workers Compensation Board opinions prior to 2011 to distinguish cases dealing with a "single traumatic event" from those involving repetitive trauma. See e.g., *Fleming v. Ridgeway Controls, Inc.*, No. 244,331, 1999 WL 1113619, *2 (Kan. Work. Comp. App. Bd. 1999).

9

In 2011, the Legislature separated the terms accident and repetitive trauma, adding a new definition of repetitive trauma. It appears that the change in language was merely meant to distinguish a single "accident" from "repetitive trauma." But what is manifest is that the Legislature added a line that states, "'Accident' shall in no case be construed to include repetitive trauma in any form." The definition continues to state that the traumatic event is "often, but not necessarily, accompanied by a manifestation by force." From this, it follows that the Legislature chose not to limit an accident to a manifestation of force.

The Defendants invite us to ignore the word, arguing that the term "traumatic" is ambiguous as a matter of law because of the "number of radically different legitimate dictionary definitions of the word." They cite several out-of-state court opinions discussing the definition of traumatic in this and other contexts, including a couple of cases from the New Jersey Supreme Court. None are persuasive.

One such definition comes from Webster's Dictionary, which defines "trauma" as

> "1 *Med.* bodily injury, wound, or shock
> "2 *Psychiatry* a painful emotional experience, or shock, often producing a lasting psychic effect and, sometimes, a neurosis
> "3 any emotionally painful experience *[the trauma of being laid off]*." Webster's New World College Dictionary 1542 (5th ed. 2016).

Despite the various dictionary meanings, what is important here is that words come in clusters to communicate ideas. No matter how the word "traumatic" is defined, the accident must cause an injury. And the injury must be a "lesion or change in the physical structure of the body." K.S.A. 2015 Supp. 44-508(f)(1). The bare bones facts found in the allegations made in the petition here offer no evidence of accident or trauma. The district court did not address any of these concepts in its order. Instead, it relied entirely upon the holding in *Scott.*

10

Moving on, we note that the Plaintiffs also contend that their claim did not "arise out of employment" as that phrase is defined in the Act. Before and after *Scott*, the Act has required that the claimant have suffered a personal injury "arising out of and in the course of employment." K.S.A. 44-501(a) (Furse 1993); K.S.A. 2015 Supp. 44-501b(b). But the meaning of that phrase has changed significantly. Importantly, whether an injury arose out of and in the course of employment is a question of fact. *Moore v. Venture Corp.*, 51 Kan. App. 2d 132, 137, 343 P.3d 114 (2015).

The following language was added to the Act and clearly limits compensation:

"An injury is compensable only if it arises out of and in the course of employment. An injury is not compensable because work was a triggering or precipitating factor. An injury is not compensable solely because it aggravates, accelerates or exacerbates a preexisting condition or renders a preexisting condition symptomatic." K.S.A. 2015 Supp. 44-508(f)(2).

"An injury by accident shall be deemed to arise out of employment only if:
"(i) There is a causal connection between the conditions under which the work is required to be performed and the resulting accident; and
"(ii) the accident is the prevailing factor causing the injury, medical condition, and resulting disability or impairment." K.S.A. 2015 Supp. 44-508(f)(2)(B).

Under the prior version of the Act, when a worker's job duties aggravated, accelerated, or intensified a preexisting condition, the worker was entitled to compensation *for any increase* in the functional impairment associated with the aggravation. K.S.A. 44-501(c) (Furse 1993) stated: "The employee shall not be entitled to recover for the aggravation of a preexisting condition, except to the extent that the work-related injury causes increased disability. Any award of compensation shall be reduced by the amount of functional impairment determined to be preexisting."

11

But the 2011 amendments changed those rules. The statute now excludes liability for preexisting conditions when the injury is solely an aggravation of the preexisting condition. See *Le v. Armour Eckrich Meats*, 52 Kan. App. 2d 189, 193-95, 198, 364 P.3d 571 (2015). In their brief, Plaintiffs contend that Endres had a preexisting coronary condition, though it is not alleged in their petition. If Endres' heart attack was indeed solely an aggravation, acceleration, or exacerbation of his preexisting coronary condition, then Plaintiffs' claim would be excluded under the Act. But the district court had no medical evidence to consider and could not decide this factual question when ruling on a motion to dismiss. Neither can we.

Previously, an injury was deemed to arise out of employment where it arose out of the nature, conditions, and incidents of employment and did not arise from a hazard to which the worker would have been equally exposed apart from the employment. *Martin v. U.S.D. No. 233*, 5 Kan. App. 2d 298, 299, 615 P.2d 168 (1980). For example, the *Scott* court found that "Scott would not have been equally exposed to the risk of negligent medical treatment by Wolf Creek physician's assistants apart from his employment at Wolf Creek." 23 Kan. App. 2d at 160.

In 2011, the "prevailing factor" requirement was added to the Act. The Act provides that "'[p]revailing' as it relates to the term 'factor' means the primary factor, in relation to any other factor. In determining what constitutes the 'prevailing factor' in a given case, the administrative law judge shall consider all relevant evidence submitted by the parties." K.S.A. 2015 Supp. 44-508(g). Here, the accident—the misdiagnosis—must be the primary factor "causing the injury, medical condition, and resulting disability or impairment." K.S.A. 2015 Supp. 44-508(f)(2)(B)(ii).

There is no relevant evidence to consider because of the procedural posture of this case. If the primary factor causing Endres' cardiac arrest, acute myocardial infarction, or death was not Nurse Young's misdiagnosis—but rather Endres' preexisting coronary

12

condition—then the Plaintiffs' claim is not compensable under the Act. An employee can only recover if the accident, not a preexisting condition, was the primary cause of the employee's injury. See *Buchanan v. JM Staffing, LLC*, 52 Kan. App. 2d 943, 949, 379 P.3d 428 (2016).

Endres had chest pain before he went to see Nurse Young. It is possible that her negligence was a contributing factor to Endres' heart attack and death, but not the primary factor. Plaintiffs' petition provides for such possibility when it states that Nurse Young's negligence "caused or contributed to" the injury and death of Endres. This is another question of fact that the district court could not decide. Again, neither can we.

The district court's decision speaks in terms of "but for" causation and the "concurrence rule." After the 2011 amendments, however, not only must there be "a causal connection between the conditions under which the work is required to be performed and the resulting accident," but the accident must now be "the prevailing factor causing the injury, medical condition, and resulting disability or impairment." K.S.A. 2015 Supp. 44-508(f)(2)(B). It appears that the district court here used the incorrect standard of "but for causation" and not "the prevailing factor causing injury."

Moreover, it appears the concurrence rule was eliminated by the 2011 amendments to the Act, specifically K.S.A. 2015 Supp. 44-508(f)(3)(A)(i)-(iv). See *Graber v. Dillon Companies*, 52 Kan. App. 2d 786, 798, 377 P.3d 1183 (2016), *rev. granted* 306 Kan. 1317 (2017); *Stepter v. LKQ Corp.*, No. 117,002, 2017 WL 4456730, at *5 (Kan. App. 2017) (unpublished opinion). Under that statute, the Act excludes injuries that are the result of the natural aging process and injuries that arise out of a risk personal to the worker.

With the statutory changes to injury, accident, trauma, and the imposition of the new requirement of making the accident the prevailing factor of injury, *Scott* is no longer

13

trustworthy precedent. The legal matrix has changed and we are no longer persuaded by its holding. Also, when we look at the inherent limitations of a motion to dismiss on the pleadings, relying solely on the limited fact allegations in the petition, we and the district court have no way to make important judgments about the applicability of the Act that exists now, as opposed to the Act of 20 years ago. We simply do not have enough facts to make those legal judgments.

*The heart amendment also comes into play.*

From time to time, the Legislature draws a line in the sand and says we cannot cross it. Such a line is the heart amendment. It did so when it amended the Kansas Workers Compensation Act in 1967 to limit the compensability for workers' heart attacks and ended a long line of cases in which compensation had been awarded even though a preexisting heart or vascular condition was a predisposing factor to injury. *Mudd v. Neosho Memorial Regional Medical Center*, 275 Kan. 187, 190, 62 P.3d 236 (2003). This amendment is frequently referred to as the "heart amendment."

The heart amendment clearly denies compensation to workers for heart attacks unless the exertion of the work precipitated the injury:

> "[C]ompensation shall not be paid in case of coronary or coronary artery disease or cerebrovascular injury unless it is shown that the exertion of the work necessary to precipitate the disability was more than the employee's usual work in the course of the employee's regular employment." K.S.A. 2015 Supp. 44-501(c)(1).

One of the definitions of precipitate is "to cause to happen before expected." See Webster's New World College Dictionary 1147 (5th ed. 2016).

14

Accordingly, in order to receive benefits, claimants must demonstrate that their coronary and cerebrovascular injuries arose out of something more than the exertion required of their usual work in the course of their regular employment. *Mudd*, 275 Kan. at 191. There has been no substantial change to the heart amendment since its enactment, except that exclusions for firefighters and law enforcement officers, under certain circumstances, have been created by the Legislature. See L. 1967, ch. 280, § 1.

Even with the massive revision of the Act in 2011, the heart amendment remains intact. This lack of change strikes us as significant. When the Legislature had an opportunity to change the law and did not take it, to us, that means that law is still the public policy that controls. We must look at the plain meaning of this statute.

There are certain principles of statutory construction that are fundamental. One is that when a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Ullery v. Othick,* 304 Kan. 405, 409, 372 P.3d 1135 (2016). The Plaintiffs argue that Endres' heart attack was not caused by unusual exertion at work and, thus, a workers compensation claim would be barred by the heart amendment. We agree.

There is certainly no claim in the petition of an external force that caused Endres' injury that would avoid the heart amendment altogether, as the extreme heat did in *Dial v. C.V. Dome Co.*, 213 Kan. 262, 515 P.2d 1046 (1973), or the extreme cold in *Makalous v. State Highway Comm.,* 222 Kan. 477, 565 P.2d 254 (1977). These are two cases from 40 years ago where the Supreme Court held the heart amendment was not applicable. They are briefly acknowledged in *Mudd.* They do not affect our reasoning. The plain meaning of the law compels this interpretation: based on the allegations made in this petition, the heart amendment bars any workers compensation benefits here.

It follows then, that if the Plaintiffs' claims are not compensable under the Kansas Workers Compensation Act, then the court erred when it granted the Defendants' motion to dismiss on the pleadings. The Defendants have not met their burden to show that that Act provides for the Plaintiffs' recovery. We cannot reasonably hold that Plaintiffs' claim is compensable under the Act based on the allegations in the petition.

We are reminded that the dismissal of the lawsuit was proper only if the allegations in the petition clearly demonstrate the plaintiffs *do not* have a claim. *Steckline*, 305 Kan. 761, Syl. ¶ 2. With no exclusive remedy provided by workers compensation, we examine this petition as a tort claim.

Within its four corners, the Plaintiffs' petition states a claim for which relief may be granted. Kansas common law recognizes a claim for "loss of chance to survive" when a plaintiff was already suffering from some injury or illness and a misdiagnosis is alleged to have diminished the plaintiff's chance of surviving from that preexisting injury or illness. The claim is similar to an ordinary medical malpractice claim, but with a reduced standard of proof of causation.

The Plaintiffs must show that the alleged negligence was the proximate cause of the lost chance, but the lost chance itself need only be a substantial chance for a better result, in the absence of any malpractice. *Delaney v. Cade*, 255 Kan. 199, 202, 212, 215-16, 873 P.2d 175 (1994); *Calvert v. Pevehouse*, No. 94,253, 2006 WL 3056509, at *5 (Kan. App. 2006) (unpublished opinion). Plaintiffs alleged that "[h]ad Steven Endres' condition been properly assessed, diagnosed, monitored and appropriate care and treatment been provided by defendants, Steven Endres would not have endured significant avoidable pain, suffering and death." The Plaintiffs have stated a claim for the purposes of K.S.A. 2016 Supp. 60-212.

We reverse and remand for further proceedings.

16